UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ANDREW MUSTAIN, Plaintiff, | § § § | CIVIL ACTION NO. _____ |
| v. | § § § | Judge_____ |
| CITY OF HOUSTON, Defendant. | § § § § | Jury Trial Demanded |

### PLAINTIFF'S ORIGINAL COMPLAINT

ANDREW MUSTAIN, Plaintiff ("Mustain" or "Plaintiff") brings this lawsuit against the City of Houston, Defendant ("Defendant"), and for cause of action against it would show the Court as follows:

### I. PARTIES

1. Plaintiff Andrew Mustain is a resident of the State of Texas. At all relevant times, Plaintiff was employed by Defendant in Harris County, Texas.

2. Defendant, City of Houston, is a political subdivision of the State of Texas, whose principal office is in Houston, Harris County, Texas. Defendant may be served with process by serving the City Secretary, Pat J. Daniel, or the Mayor, Sylvester Turner, at Houston City Hall, 901 Bagby St., Houston, Texas 77002.

1

## II. JURISDICTION and VENUE

3. Plaintiff brings this suit under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and under 42 U.S.C. § 1983. This Court has jurisdiction of this case according to 28 U.S.C. §§ 1331 and 1343.

4. The practices alleged herein were committed within the jurisdiction of this Court. The amount in controversy is within the jurisdictional limits of this Court.

## III. ADMINISTRATIVE EXHAUSTION

5. All conditions precedent to the filing of this action have been met by Plaintiff in that he timely filed his complaint with the Equal Employment Opportunity Commission ("EEOC") and has received his right-to-sue letter from the EEOC to pursue his claims of discrimination and retaliation.

6. Plaintiff filed a Charge of Discrimination 460-2024-05680 with the TWC-CRD and the EEOC on May 8, 2024.

7. On or about July 18, 2024, Plaintiff received his Notice of Right to File a Civil Action issued by the EEOC entitling him to file suit based on his claims of discrimination and retaliation.

8. The filing of this lawsuit has been accomplished within ninety (90) days of Plaintiff's receipt of the notice from the EEOC.

9. Plaintiff Andrew Mustain is a Sergeant with the Houston Police Department. He joined the department in March of 2011, and in challenging retributive charges prompted against him by Officer Varner, and pushed by Assistant Chief Yasir Beshir for and with then Chief Finner, Mustain was described by an impartial arbitrator on December 22, 2023, as,

10. Prefatory to this document's Factual Statement, Mustain was described in an official public document by arbitrator Sidney Moreland, IV, in case number 2022-HPD-033 as follows:

> "The record and character of Sgt. Mustain is evident throughout the testimony and documents reviewed and fairly mitigates the only minor and momentary error in judgment substantiated against him. Otherwise, the evidence presented by Sgt. Mustain portrays an exceptional public servant, humanitarian, leader and law enforcement professional with the extraordinary admiration of his colleagues and the public. The evidence overlooked by the Department, includes Sgt. Mustain's exceptional record of service which was not considered in the

deliberation of assessing district... As a consequence of Complainant Varner's largely unproven and unchecked accusations, the successful and productive Crime Suppression Team with by Sgt. Mustain was disbanded to the nucleation of Sgt. Mustaine and the team members who routinely risked their safety for the public in that commendable service. Sgt. Mustain was transferred and endured the false allegations three months of investigation1 sworn statements, and interviews."

## IV. FACTUAL BACKGROUND

11. In January of 2020, Plaintiff took a Sergeant position in the Midwest Crime Suppression Team. This was a special position that he had to apply and interview for. This position came with a certain amount of prestige, special pay, and frequent paid overtime opportunities.

12. While in this position, Plaintiff and his team were recognized numerous times by receiving commendations.

13.  In May of 2021, Officer Curtis Varner transferred onto Plaintiff's team. There were a few times during the coming months that Plaintiff discussed with Varner the need to document cases better.

14. In February of 2022, Officer Varner went against a direct order and a well-planned operational plan which resulted in a situation that placed himself, his team, and a citizen in great danger. Plaintiff and his Lieutenant decided to address the issue with additional counseling and training instead of an official Internal Affairs Complaint.

15. On February 22, 2022, Officer Varner signed himself into two separate training classes that ran during the same time period at the training academy. These sign-in sheets are official government documents.

16. On March 4, 2022, Plaintiff and his Lieutenant met with Officer Varner to inquire if he had signed into two classes. Varner denied it several times, stating that he did not do it and never would.

17. During this time, Officer Varner made complaints about interpersonal issues which he claimed were race-based against him. Officer Varner is African American. At this time, he refused to give any specifics or details.

18. Plaintiff and his Lieutenant asked Varner multiple times to give names and specific instances so they could file an Internal Affairs complaint on those responsible, but Varner still refused to provide details.

19. On March 8, 2022, Plaintiff and Officer Varner met with their Commander. During the meeting, Varner again made claims that he was being racially discriminated against; however, he would not provide any specifics or actionable details.

20. After this meeting, Plaintiff informed the Commander of Officer Varner's conduct, including signing two government documents stating he was in two separate classes at the same time. The Commander ordered Plaintiff to file a complaint on Officer Varner if the sign-in sheets showed he signed into both classes.

21. Plaintiff proceeded to file the complaint as ordered, labeling it as "Untruthfulness," which is a major policy violation in the Houston Police Department.

22. Following this incident, Plaintiff experienced a series of retaliatory actions, including but not limited to:

  a. Unwarranted disciplinary actions against him
  b. Retroactive lowering of his job performance reviews
  c. Involuntary transfer out of his specialized unit
  d. Loss of specialized pay and overtime opportunities
  e. Damage to his reputation within the department

23. Plaintiff believes these actions constitute a pattern of retaliation for his reporting of Officer Varner's misconduct and create a hostile work environment.

24. Assistant Chief Beshir, was a close and loyal subordinate to former Chief Troy Finner who reportedly was Officer Varner's "angel" or protector in office; Varner had repeatedly bragged about having close ties in Chief Finner's office and Mustain began to worry and stated to his Superiors he felt he was being targeted by reverse racism on the part of Varner and maybe Chief Finner.

25. After all, it had been Chief Finner who called the shot, so to speak to punish Sgt. Mustain when Varner had pushed for his punishment after Mustain had discovered that Varner had by a petty act criminally altered the records of the HPD.

26. In May 2024, Chief Finner suddenly retired in a situation described by the Texas Tribune as follows,

> Chief Troy Finner abruptly retired Wednesday from the Houston Police Department in a late-night resignation given to Mayor John Whitmire

amid an ongoing probe into how the department has [suspended thousands of criminal investigations](#).

At issue is an internal department computer code that police used in 264,000 cases to suspend investigations due to a lack of personnel. The crimes included roughly 4,000 sexual assault cases.

Whitmire said Finner's decision to retire ultimately was the chief's, but it was made in "dialogue" with the mayor.

Finner's sudden departure came after local media [obtained an email](#) that showed Finner had been aware of that code as early as 2018. Finner had previously said he learned of the code in 2021.

27. But when Finner (Black) was Chief, Assistant Chief Beshir, undertook to retaliate against Mustain (White) because Mustain had dared to challenge Varner and the Chief in a contract arbitration challenging the flawed professional integrity of Varner and indirectly Finner.

28. Mustain applied for a posted opening at the Westside service center, but Bashir who was the policymaker or ultimate decisionmaker of personnel matters at that center refused to permit Mustain to be reassigned to the

Westside center and even went so far As to tell the responsible officers at that location that they *could not hire or accept Mustain into Westside.*

29. When Mustain tested for the open position, shortly before the testing, Bashir rigged the tests so that they were weighted unlike the similar tests in any of Bashir's other controlled HPD venues, and although Mustain scored at a level that without Bashir's tilting of the scoring method would have entitled him to the position at Westside.

30. Not only did Bashir rig the posted positions application's test scoring system, but it is believed that Bashir had participated in altering the of Mustain's prior evaluations to minimize their career value to Mustain.

31. Bashir attempted to ban Mustain from advancement in his career in the HPD.

## V. COUNT ONE:
**RETALIATION IN VIOLATION OF TITLE VII**

23. Plaintiff incorporates by reference the preceding paragraphs as set forth herein.

24. Defendant, by and through its agents and employees, has intentionally engaged in the aforementioned practices, policies, customs, and usages made unlawful by Title VII.

25. Defendant has violated Title VII by retaliating against Plaintiff for engaging in protected activity, namely reporting Officer Varner's misconduct and opposing discriminatory practices within the department.

## VI. COUNT TWO:

**VIOLATION OF FIRST AMENDMENT RIGHTS UNDER 42 U.S.C. § 1983**

26. Plaintiff incorporates by reference the preceding paragraphs as set forth herein.

27. Defendant, by and through its agents and employees, violated Plaintiff's First Amendment rights by retaliating against him for speaking out on matters of public concern, namely misconduct within the police department.

## VII. COUNT THREE:

## VIOLATION OF FOURTEENTH AMENDMENT RIGHTS UNDER 42 U.S.C. § 1983

28. Plaintiff incorporates by reference the preceding paragraphs as set forth herein.

29. Defendant, by and through its agents and employees, violated Plaintiff's Fourteenth Amendment rights to substantive due process by retaliating against him or denying him a fair promotional or preferred assignment opportunity for arbitrary and capricious reasons, reasons not grounded in reasoned analysis, by inexplicably acting in noncompliance with the rules and policies and widespread practices tantamount tot Department Policies.

## IX. DAMAGES

30. As a direct and proximate result of the aforementioned acts, Plaintiff has suffered economic loss, compensatory loss, and mental anguish.

## X. ATTORNEY'S FEES

31. Defendant's actions and conduct as described herein and the resulting damage and loss to Plaintiff has necessitated Plaintiff retaining the services of WATTS & COMPANY, LAWYERS, LTD. in initiating this proceeding. Plaintiff

seeks recovery of reasonable and necessary attorney's fees and costs of court.

## XI. JURY DEMAND

32. Plaintiff demands a trial by jury.

## XII. PRAYER

33. Plaintiff respectfully prays that Defendant be cited to appear and answer, and that on final hearing of this cause Plaintiff obtain jury verdict and judgment.

Respectfully submitted,

By: /s/ *Larry Watts*
Laurence Watts
TBN. 20981000
FID 7092
P.O. Box 2214
Missouri City, Texas 77459
Tel: (281) 431-1500
Fax: (877) 797-4055
larry@wattsjustice.attorney